[736 NYS2d 371]

In the Matter of DAN M. DE LA ROSA, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, January 24, 2002

#### APPEARANCES OF COUNSEL

*Joseph J. Hester* of counsel (*Thomas J. Cahill,* attorney), for petitioner.

*Howard Benjamin* of counsel (*Gentile Brotman Maltz & Benjamin LLP,* attorneys), for respondent.

#### OPINION OF THE COURT

Per Curiam.

Respondent Dan M. de la Rosa was admitted to the practice of law in the State of New York by the First Judicial Department on January 23, 1995, and at all times relevant herein, he

has maintained an office for the practice of law within the First Judicial Department.

Respondent was served with a notice and statement of charges which alleged that he falsified an expense report and related invoices arising out of a trip to Las Vegas, Nevada, on a client matter, thereby inflating his expenses by approximately $2,000. Respondent was charged with engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3), by submitting a falsely inflated expense report and falsely altered invoices to his employer law firm; and engaging in illegal conduct that adversely reflected on his honesty, trustworthiness or fitness as a lawyer, in violation of DR 1-102 (a) (3), by submitting the falsified documents with the intent of defrauding his firm.

The facts germane to this matter are set forth in a prehearing stipulation entered into by the parties on January 31, 2001. In November 1999, respondent, who had begun his employment as an attorney at the firm of Dreier & Baritz, LLP (D&B) on April 1, 1999, flew to Las Vegas, Nevada on firm business. Respondent took depositions concerning a pending litigation which took place over the course of approximately five days. Prior to departing New York, respondent booked airline passage for himself and a female companion, as well as hotel accommodations for 10 nights, at the Venetian Hotel in Las Vegas.

Respondent, upon his return to New York, submitted an individual expense report to D&B reflecting expenses for a five-day period. Respondent listed: $2,124.80 for hotel expenses, although the actual amount was $1,766; $2,044.50 for air transportation, although the actual charge for round-trip airfare for two persons was $799; and $779.33 for car rental, when the actual amount was $451.15. In sum, respondent's actual expenses totaled $3,016.15, but he falsely charged $4,948.63, a difference of $1,932.48.

In addition to the expense report, respondent also submitted to D&B an altered travel agency itinerary/invoice which made it appear that all of the hotel and airfare costs were for him alone, and an altered invoice from the Venetian Hotel which indicated that the charge was for a five-day, rather than a 10-day stay. Respondent, when confronted by members of D&B shortly after his return, admitted that he had altered the invoice and falsified the expense report.

At evidentiary hearings held on January 31 and February 2, 2001 before a Referee appointed by this Court, respondent did

not attempt to controvert the facts but, rather, presented evidence in mitigation. Respondent initially called four character witnesses, including former coworkers and clients, who testified, *inter alia*, as to the high degree of respondent's honesty and integrity as well as his professionalism.

Respondent testified that his father died when he was young and, after attending Cardozo Law School, he was hired as an associate with Reid, Smith in Philadelphia, Pennsylvania. Respondent averred that because of his mother's poor health, he transferred to Reid, Smith's Manhattan office in 1998 in order to be closer to her. Respondent maintained that he thereafter met Barry Schindler, Esq., who recruited him to D&B, where he earned $175,000 per year plus an additional 10% of any fees generated from clients he brought to the firm. Respondent explained that D&B owed him $4,870.30 for expenses incurred during a business trip; $7,000-$8,000 as a percentage of fees owed to him as the result of a client he brought to the firm; and a $5,000 bonus that Schindler had promised him for joining the firm, none of which he had received. Respondent testified that he was feeling increased financial pressure at home because of his mother's lingering illness and his ongoing responsibility to contribute substantially to her support. Respondent stated that he was in a "panic scenario" regarding his bills and that he "stupidly" altered the expense reports in question.

The Referee, based on the stipulated facts, testimony and documentary evidence, sustained both charges of misconduct, finding, *inter alia*, that respondent "undertook affirmative action to falsify and alter the expense report and invoices for his monetary gain to the detriment of his employer, and, ultimately, if not detected, to a completely innocent client." The Referee also referred to respondent's evidence of integrity and honesty, as well as the financial and personal pressures he was under at the time, and noted that such "may help to explain what appears to be aberrant behavior." The Referee also referred to the fact that respondent had no other disciplinary record and that he was contrite, understood the gravity of his acts and took responsibility for them. The Referee, however, observed that respondent did not commit a "split-second act," that it took time to put together the false expense report and altered invoices, and that respondent did not admit to the conduct until confronted.

The Referee, under the totality of the circumstances, and after noting that the Departmental Disciplinary Committee (the

Committee) sought a three-year suspension, recommended a two-year suspension. A Hearing Panel thereafter convened on May 24, 2001 and, after oral argument, issued its determination on June 4, 2001, which confirmed the Referee's findings but disaffirmed the sanction recommendation. The Hearing Panel recommended instead that the Court issue a public reprimand, as it found that the two-year suspension recommended by the Referee was "unnecessary and [an] unduly punitive sanction for the aberrational misconduct committed by Respondent."

The Committee now seeks an order confirming the findings of fact and conclusions of law set forth in the Hearing Panel's report and imposing such discipline as the Court deems fair, just and equitable.

Initially, we find that in light of the stipulated facts and the evidence presented, the Hearing Panel's findings of fact and conclusions of law in which the two charges of misconduct are sustained are confirmed. With regard to sanction, we note that there are substantial mitigating factors present, including the aberrational nature of respondent's conduct, his admission of fault, his complete cooperation with the Committee, his sincere expression of remorse, the substantial adverse personal and professional consequences of his misconduct, his emotional and financial devotion to his mother, and his otherwise clean record and good moral character. Viewing the misconduct in light of the mitigating factors, we now confirm the Hearing Panel's recommendation in that public censure is the appropriate sanction. Accordingly, the motion to confirm the Hearing Panel's findings of fact and conclusions of law should be granted and respondent publicly censured for his misconduct.

NARDELLI, J. P., SAXE, ROSENBERGER, ELLERIN and LERNER, JJ., concur.

Respondent publicly censured.